Lani MEYER, by and through
her next friend, Rebecca
COPLIN, Appellant,

v.

FLUOR CORPORATION,
et al., Respondents.

No. SC 87771.

Supreme Court of Missouri,
En Banc.

March 20, 2007.

Rehearing Denied May 29, 2007.

Edward D. Robertson, Anthony L. De-Witt, Mary D. Winter, Jefferson City, Robert F. Ritter, Maurice B. Graham, Don M. Downing, St. Louis, MO, Kevin S. Hannon, The Hannon Law Firm, LLC, Denver, CO, for Appellant.

Andrew Rothschild, Richard A. Ahrens, Jeremy P. Brummond, Ted L. Perryman, Theodore J. Williams, Jr., Thomas L. Orris, heather Langlois, Jeffrey L. Cramer, T. Michael Ward, John H. Quinn, III, Robert G. Raleigh, Armstrong Teasdale, LLP, St. Louis, MO, for Respondents.

Michael S. Cessna, Kansas City, MO, Deborah J. La Fetra, Sacramento, CA, for Amicus Curiae Pacific Legal Foundation.

Jordan B. Cherrick, Kirsten M. Ahmad, St. Louis, MO, Hugh F. Young, Jr., Reston, VA, for Amicus Curiae The Product Liability Advisory Council, Inc.

RICHARD B. TEITELMAN, Judge.

Lani Meyer, by and through her next friend, Rebecca Coplin, ("Plaintiff") ap-

peals from the order of the circuit court denying class certification in a tort action filed on behalf of a proposed class of children exposed to lead due to the operation of the Doe Run lead smelter in Herculaneum, Missouri. Plaintiff seeks, *inter alia,* to recover compensatory damages for the expense of prospective medical monitoring allegedly necessitated by emissions from the smelter. This Court concludes that the circuit court erred in denying class certification. The judgment is reversed, and the case is remanded.

## I. *FACTS*

Fluor Corporation and several other entities and individuals ("Defendants") are involved with the operation of the Doe Run lead smelter in Herculaneum. Each year, the smelter emits large quantities of lead into the local environment, allegedly resulting in higher levels of lead and other toxins than would otherwise be present in and around Herculaneum. There is no dispute that lead is toxic and that children are generally more susceptible to injury from lead poisoning than are adults. There is also no dispute that injuries from lead exposure are often latent injuries; that is, a diagnosable physical injury or illness is not immediately apparent and years may pass before symptoms are detected.

Plaintiff filed a petition asserting that she is a member of a class of children in and around Herculaneum who has been exposed to toxic emissions from the smelter. Plaintiff alleged negligence, strict liability, private nuisance, and trespass as theories of liability and sought compensatory damages to establish a medical moni-

toring program for class members. The purpose of the monitoring program would be to provide ongoing diagnostic testing to determine whether the exposure to lead and other toxins has caused or is in the process of causing an injury or illness. The proposed class consists of over 200 children and includes:

1. All minors who lived within the Class Geographic Area[1] for at least 12 months when they were 72 months old or less and are currently 168 months or less;

2. All minors who have gone to school or day care within the Class Geographic Area for at least 12 months when they were 72 months old or less and who are not members of (a) above, and who are currently 168 months or less;

3. All minors who were born to mothers who lived within the Class Geographic Area for more than seven months during their pregnancies and who are not members of (a) or (b) above and who are currently 168 months or less.

Plaintiff sought class certification pursuant to Rule 52.08(b)(3), asserting that common issues of law and fact were predominate over individual issues.

The circuit court held a certification hearing and found that "individual issues will necessarily predominate over common issues in this case" and that the case could not be efficiently addressed on a class-wide basis. Accordingly, the court entered an order denying Plaintiff's motion for class certification.[2]

---

1. The Class Geographic Area includes most of the City of Herculaneum, including those areas of the City that are adjacent to the Doe Run smelter.

2. Before addressing the predominance issue, the circuit court found that joinder of all proposed class members was impractical and that the "numerosity" requirement of Rule 52.08(a) was thereby satisfied. However, the court did not make specific findings regarding

On appeal, Plaintiff argues that the circuit court erred because its class action analysis assumed incorrectly that a present physical injury is a necessary element of a medical monitoring claim. Plaintiff asserts that the circuit court focused on individual proof issues that are primarily relevant to a personal injury action, not a medical monitoring claim. Plaintiff further argues that the circuit court's reliance on two cases, *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145, 165 (2nd Cir.1987), and *Owner–Operator Indep. Drivers Ass'n v. New Prime*, 213 F.R.D. 537, 547 (Mo.2002), neither of which involved a medical monitoring claim, lends further support to the argument the circuit court mistakenly focused its class certification analysis on present physical injuries instead of the overriding common issue of class-wide exposure to toxins.

## II. *STANDARD OF REVIEW*

■ This Court reviews an order granting or denying class certification for abuse of discretion. *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. banc 2004). A class certification hearing is a procedural matter in which the sole issue is whether plaintiff has met the requirements for a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Thus, the trial court has no authority to conduct a preliminary inquiry into whether the plaintiff has stated a cause of action or will prevail on the merits. *Id.* at 177, 94 S.Ct. 2140. Although the class certification decision lies in the circuit court's discretion, the courts should err in close cases in favor of certification because the class can be modified as the case progresses. *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 164 (Mo.App.2006) (citing *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D.Colo.1990)).

## III. *ANALYSIS*

### A. *Class Actions*

Rule 52.08 governs the procedure for certifying a class action. There are four prerequisites to class certification: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) the representative parties must be able to fairly and adequately protect the class' interest. Rule 52.08(a).

Once the prerequisites of Rule 52.08(a) are met, the class action can be maintained only if the class satisfies one of the three requirements of Rule 52.08(b). Plaintiff sought class action certification under Rule 52.08(b)(3), which requires the trial court to find that the questions of law or fact common to the class members "predominate over any questions affecting only individual members" and that a class action is superior to other available methods for the fair and efficient adjudication of the matter.

In *State ex rel. American Family Mutual Ins. Co. v. Clark*, 106 S.W.3d 483 (Mo. banc 2003), this Court explained the "predominance" requirement:

> "The 'predominance' requirement ... does not demand that every single issue in the case be common to all the class

the "commonality" and "typicality" requirements of Rule 52.08(a)(1). Neither the Plaintiffs nor the Defendants raise an issue with any of the circuit court's findings under Rule 52.08(a). Consequently, resolution of this appeal depends solely upon an analysis of the circuit court's finding that the predominance requirement of Rule 52.08(b)(3) was not satisfied.

members, but only that there are substantial common issues which 'predominate' over the individual issues." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C.1991) (citing 3B Moore & Kennedy, Moore's Federal Practice ¶ 23.06–1 at 23–159, 160). The predominant issue need not be "dispositive of the controversy or even be determinative of the liability issues involved." Alba Conte & Herbert Newberg, Newberg on Class Actions section 4:25, at 169 (4th ed.2002). The need for inquiry as to individual damages does not preclude a finding of predominance. *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 12 (D.D.C.1992) (mem.); see also *Freedman v. Louisiana–Pacific Corp.*, 922 F.Supp. 377, 401 (D.Or.1996); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 60 (N.D.Ill.1996) (memo). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." Conte & Newberg section 4:25, at 172.

*Id.* at 488. In other words, "when one or more of the central issues in the action are common to the class and can be said to predominate," the case may properly proceed as a class action, even though other important matters will have to be tried separately. 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D section 1778, at 529 (1986).

■ Although the class certification decision is independent of the ultimate merits of the lawsuit, "a court must understand the ... applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). Without a grasp of the nature and scope of Plaintiff's claim for medical monitoring damages, it would be difficult to identify the relevant issues. It is, therefore, necessary to determine the scope of a medical monitoring claim.

### B. *Medical Monitoring*

■ In toxic tort cases, there is often no immediately diagnosable physical injury or illness. Instead, the injury is latent and may not be discovered for months or even years. The widely recognized tort law concepts premised upon a present physical injury are ill-equipped to deal with cases involving latent injury. To deal with this reality, tort law has evolved over the years to allow plaintiffs compensation for medical monitoring.[3] A medical monitoring claim seeks to recover the costs of future reasonably necessary diagnostic testing to detect latent injuries or diseases that may develop as a result of exposure to toxic substances. *Ayers v. Jackson Township*, 106 N.J. 557, 525 A.2d 287, 308 (1987). The courts that have approved medical monitoring claims recognize that "significant economic harm may be inflicted on

---

**3.** See, e.g., *Badillo v. American Brands, Inc.*, 117 Nev. 34, 16 P.3d 435 (2001); *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424, 429–430 (1999); *Bourgeois v. A.P. Green Industries, Inc.*, 716 So.2d 355 (La.1998); *Redland Soccer Club v. Dept. of the Army*, 548 Pa. 178, 696 A.2d 137, 145–146 (1997); *Doe v. City of Stamford*, 241 Conn. 692, 699 A.2d 52, 55 (1997); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970 (Utah 1993); *Potter v. Firestone Tire Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993); *Cook v. Rockwell, Int'l Corp.*, 755 F.Supp. 1468, 1477 (D.Colo.1991); *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 850 (3rd Cir.1990); *Ayers v. Township of Jackson*, 106 N.J. 557, 525 A.2d 287 (1987); *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28 (App.1987) *Askey v. Occidental Chemical Corp.*, 102 A.D.2d 130, 477 N.Y.S.2d 242, (N.Y.App. Div. 4th Dep't 1984); *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431 (Tenn.1982).

those exposed to toxic substances, notwithstanding the fact that the physical harm resulting from such exposure is often latent." *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424, 429 (1999)(citing *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 850 (3rd Cir.1990)).

▪▪▪ This Court has not addressed whether Missouri law permits the recovery of medical monitoring damages. However, in *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo.App.1988), the court analyzed the admissibility of medical testimony in a toxic tort case and, in holding that the testimony was admissible, stated that:

> The evidence of significant, albeit unquantified, risk of cancer from the exposure to the toxic [chemicals], however, was competent to prove, as a separate element of damage, the need for medical surveillance of the immune system and other organs, and hence was admissible for that purpose.

The *Elam* court recognized that among the potential damages sustained by a plaintiff who is exposed to a toxin is the need for medical monitoring for the "early detection of serious disease from the chronic exposure" to toxins. *Id.* at 209. The court further reasoned that medical monitoring costs are recoverable because "compensation for necessary medical expenses reasonably certain to be incurred in the future rests on well-accepted legal principles." *Id.* at 209. These "well-accepted" principles of Missouri law provide that a plaintiff is entitled to recover for the prospective consequences of the defendant's tortious conduct if the injury is reasonably certain to occur. *See, e.g., Wilcox v. Swenson*, 324 S.W.2d 664, 673

(Mo.1959)(plaintiff injured in car accident could recover anticipated costs of future medical expenses caused by accident); *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 210–11 (Mo. banc 1991) ("The standard for recovering for future consequences requires evidence of such a degree of probability of those future events occurring as to amount to reasonable certainty"). Recognizing that a defendant's conduct has created the need for future medical monitoring does not create a new tort. It is simply a compensable item of damage when liability is established under traditional tort theories of recovery. Recovery for medical monitoring damages is thus consistent with a touchstone of Missouri law, the principle that a plaintiff is entitled to full compensation for past or present injuries caused by the defendant. *See* MAI 4.01.[4]

▪▪▪ Defendants assert that any recovery for medical monitoring is contingent upon the existence of a present physical injury. Although some courts have so concluded, a present physical injury requirement is inconsistent with the theory of recovery. As with any claim based in tort law, the injury underlying a medical monitoring claim is the invasion of a legally protected interest. Just as an individual has a legally protected interest in avoiding physical injury, so too does an individual have an interest in avoiding expensive medical evaluations caused by the tortious conduct of others. "When a defendant invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations." *Potter v. Firestone Tire Rubber Co.*, 6 Cal.4th 965,

---

4. It bears emphasizing that allowing compensation for medical monitoring costs "does not require courts to speculate about the probability of future injury. It merely requires courts to ascertain the probability that the far less costly remedy of medical supervision is appropriate." *In re Paoli*, 916 F.2d at 852.

25 Cal.Rptr.2d 550, 863 P.2d 795 (1993)(quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 826 (D.C.Cir.1984)). Even though a plaintiff may not have yet developed a diagnosable physical injury, it is not accurate to conclude that no compensable injury has been sustained. *Petito v. A.H. Robins,* 750 So.2d 103, 105 (Fla.App.2000). Thus, the theory of recovery for medical monitoring damages is that the plaintiff is entitled, upon proper proof, to obtain compensation for an injury to the legally protected interest in avoiding the cost of reasonably necessary medical monitoring occasioned by the defendant's actions. *Bower v. Westinghouse Electric Corp.,* 206 W.Va. 133, 522 S.E.2d 424, 429–430 (1999). The injury for which compensation is sought is not a present physical injury. Instead, medical monitoring damages compensate the plaintiff for the quantifiable costs of periodic medical examinations reasonably necessary for the early detection and treatment of latent injuries caused by the plaintiff's exposure to toxic substances. *In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829, 850 (3rd Cir.1990). A physical injury requirement is inconsistent with the reality of latent injury and with the fact that the purpose of medical monitoring is to facilitate the early diagnosis and treatment of latent injuries caused by exposure to toxins. In short, a physical injury requirement essentially extinguishes the claim and bars the plaintiff from a full recovery.

■ These considerations have led a number of courts that have addressed this issue to conclude that recovering medical monitoring damages does not require a threshold showing of present physical injury.[5] The general consensus that has emerged in these cases is that a plaintiff can obtain damages for medical monitoring upon a showing that "the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." *Bower v. Westinghouse Electric Corp.,* 206 W.Va. 133, 522 S.E.2d 424, 433 (1999). Once that has been proven, the plaintiff must then show that "medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." *Id.* at 431.[6] This general statement of the issues of proof provides the proper baseline for analyzing Plaintiff's argument that the circuit court erred in determining that individual issues of proof are predominant.[7]

5. The *Elam* court indicated that a present physical injury is not a prerequisite to recovering damages for medical monitoring by relying upon *Ayers v. Jackson Township,* 106 N.J. 557, 525 A.2d 287, 315 (1987), and *Askey v. Occidental Chem. Corp.,* 102 A.D.2d 130, 477 N.Y.S.2d 242 (N.Y.App. Div. 4th Dep't 1984), *Ayers* and *Askey* are two of the early cases establishing that traditional tort law principles support recovering medical monitoring damages and both disclaim the notion that present physical injury must be shown. The *Elam* court also specifically noted that two of the plaintiffs were presently asymptomatic. This fact did not impact the viability of the medical monitoring claim. *Id.* at 208, n. 89.

6. See also, *Redland Soccer Club v. Dept. of the Army,* 548 Pa. 178, 696 A.2d 137, 145–146 (1997); *Hansen v. Mountain Fuel Supply,* 858 P.2d 970, 977–978 (Utah 1993); *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28, 31 (App.1987).

7. In this appeal of a class certification decision, which is a procedural matter, there is no need for this Court to establish precisely what must be proven in order to recover medical monitoring damages. It is sufficient to note the theory of recovery accounts for the latent nature of injuries stemming from exposure to toxins and comports with *Elam* and general principles of Missouri tort law.

## C. *The Circuit Court's Order*

■ In its order denying class certification, the circuit court identified nine individual issues that the court concluded were predominant over the common issues. Specifically, the court found that:

> [I]ndividual issues will necessarily predominate over common issues in this case. These issues include the age at which exposure occurred, the nature of the exposure, the time period over which the exposure occurred, the blood lead level, the existence of other sources such as lead paint for any presence of lead, whether the individuals are presently suffering from any lead related injuries, whether the individuals are still being exposed or whether such exposure terminated, if the exposure to lead in Herculaneum has terminated how long ago it terminated, and whether there is any need for a particular individual to be monitored.

Each of these nine individual factors is primarily relevant to a personal injury action, not a medical monitoring claim for which there is no necessity of establishing a present physical injury. This is particularly true given Plaintiff's theory of liability, which posits that liability is premised upon the exposure to toxins from a single source during a specified age range in childhood or *in utero.* Class membership is restricted by definition to persons who have received specified, medically significant minimum levels of exposure to the toxins discharged from the Doe Run smelter. It is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiff's case. The significance and extent of toxic exposure is primarily an issue of common proof. Under this theory of liability, the individual factors identified by the circuit court are not particularly rele-

vant because the need for monitoring is based on a common threshold of exposure. Whether Plaintiff is able to prove this theory is, at this stage, irrelevant because the sole issue is whether Plaintiff met the requirements for a cause of action, not whether Plaintiff will ultimately prevail. See, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

That the circuit court's analysis assumed a present physical injury requirement is further reflected in the court's reliance on *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 145, 165 (2nd Cir. 1987), and *Owner–Operator Indep. Drivers Ass'n v. New Prime,* 213 F.R.D. 537, 547 (W.D.Mo.2002). The court cited these cases for the proposition that if individualized evidence about class members is necessary to prove that class members suffered a legal harm, then it is likely that common issues are subordinate. However, neither of these cases involved a medical monitoring claim. The *Agent Orange* case was a personal injury action and *Owner–Operator* was brought under the Truth–In–Lending Act. Liability in both cases was premised upon individualized determinations of the nature and extent of manifested damages. There is no need for such proof in a medical monitoring case. *Agent Orange* and *Owner–Operator* are not relevant authorities. The circuit court erred in relying on issues primarily relevant to a personal injury claim.

The dissenting opinions assert that Plaintiff's claims are not typical of the class because she has filed a separate personal injury action. However, the circuit court did not address the typicality issue in its judgment. The circuit court can, on remand, address and make findings on the typicality issue as well as any issue regard-

ing the substitution of parties.[8] Any finding of typicality or the lack thereof should be decided in the first instance by the circuit court, and not by this Court on appeal.

## IV. CONCLUSION

The circuit court misapplied the law by applying personal injury concepts to Plaintiff's medical monitoring claim and in holding that these individual personal injury issues were predominate over common issues. The judgment denying class certification is reversed, and case is remanded.

WOLFF, C.J., STITH and WHITE, JJ., concur.

PRICE, J., dissents in separate opinion filed; RUSSELL, J., concurs in opinion of PRICE, J.

LIMBURGH, J., dissents in separate opinion filed.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I agree with the majority opinion that common issues predominate over individual issues. From that perspective, the trial court erred in denying class certification. I write separately because the claim of the named plaintiff is not typical of the class. For that reason, the trial court was correct and the class should not be certified. *See Business Men's Assur. Co. of America v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999).

Rule 52.08(a) provides:

**Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if ... (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ...

Plaintiff in this case is Lani Meyer, by and through her next friend Rebecca Coplin. Lani alleges that she has suffered actual present injuries resulting from toxins produced by the defendants. In fact, Lani has filed a separate personal injury action against the defendants based upon those injuries in the Circuit Court for the City of St. Louis, *Meyer v. Fluor Corporation,* No. 052–9609. The class of persons Lani seeks to represent, however, are children who have been exposed to those same toxins, but who have not yet exhibited or recognized symptoms of illness.

As the majority opinion points out, there are many and significant differences between personal injury actions involving a present injury and an action for medical monitoring, including the very nature of the relief sought. As class representative, Lani seeks a money award to pay for "the costs of periodic diagnostic testing and examination necessary to detect the existence of physical harm from exposure to hazardous chemicals." However, having already suffered injury, Lani needs treatment and an award of damages for her injuries, not medical monitoring. The fact that Lani has brought her own individual lawsuit is an undeniable admission that the interest of the class and her own interests

**8.** Rule 55.33(a) provides that leave to amend "shall be freely given when justice so requires." Missouri courts have invoked this rule to permit the substitution of parties. *See, Asmus v. Capital Region Family Practice,* 115 S.W.3d 427, 433–34 (Mo.App.2003) (given the requirements of "Rule 55.33(a)," the circuit court's "refusal to allow amendment to bring suit in name of the bankruptcy trustee rather than that of injured party was an abuse of discretion"), quoting, *Union Ctr. Redevelopment Corp. v. Leslie,* 733 S.W.2d 6, 8 (Mo.App. 1987) (circuit court properly allowed amendment of pleading to substitute proper party-plaintiff where suit brought in individual name rather than in name of redevelopment corporation, but allegations otherwise were unchanged).

are not the same, but are in conflict. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)("[F]or the critically injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."); *Wall v. Sunoco, Inc.*, 211 F.R.D. 272, 279 (M.D.Pa.2002)("Several cases have addressed the conflict between representatives who are already injured and those who have only been exposed to a hazardous substance and seek medical monitoring although they currently suffer no injury. The cases find that a conflict of interest exists between the presently injured and the exposure-only plaintiffs.").

Because the claims of the proposed representative plaintiff are not typical of the class, certification is not proper under Rule 52.08(a)(3). I would affirm the judgment of the trial court denying class certification.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I concur in Judge Price's dissenting opinion except that I would not address the question of whether "common issues predominate over individual issues." There is no need to do so once it is determined that "the claim of the named plaintiff is not typical of the class."